IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-CR-31-JFH |
| ) | |
| KELLY DON GIRTY, ) | |
| Defendant. ) | |

## OPPOSED MOTION TO DISMISS INDICTMENT FOR FAILURE TO STATE AN OFFENSE

The Second Amendment is not a "second class right." No longer can courts "balance away" a constitutional right in the name of public safety. After *New York State Rifle & Pistol Ass. v. Bruen*, 142 S. Ct. 2111 (2022), the government must prove that laws regulating conduct covered by the Second Amendment align with this Nation's historical tradition. The government cannot meet its burden in Mr. Girty's case. The indictment, which alleges violations of 18 U.S.C. § 922(g)(1), must be dismissed.

### FACTUAL BACKGROUND

Mr. Girty was arrested on January 7, 2024. Mr. Girty is charged in the indictment with Count One: Possession of Unregistered Firearm in violation of 26 U.S.C. 5861(d) and Count Two: felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1). According to discovery, Mr. Girty possessed a firearm on January 7, 2024, which was located after a traffic stop. Mr. Girty was arraigned for these charges on March 19, 2024.

### LEGAL ARGUMENT

**I.     Section 922(g)(1)'s categorical prohibition on felons possessing handguns and ammunition is facially unconstitutional as a violation of the Second Amendment.**

1

The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Mr. Girty brings a facial challenge to the constitutionality of 18 U.S.C. § 922(g)(1) on the grounds that it violates his rights as granted by the Second Amendment to the United States Constitution. "A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 F.3d 739, 745 (1987). However, the Tenth Circuit has since interpreted this language to refer not to a test for facial challenges, but to the inevitable result that derives from a successful challenge. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012) (collecting cases and law review sources). "[W]here a statute fails the relevant constitutional test . . . it can no longer be constitutionally applied to anyone—and thus there is 'no set of circumstances' in which the statute would be valid." *Id*. In *Doe*, the Tenth Circuit explained that a facial challenge is "a challenge to the terms of the statute, not [to its] hypothetical applications." *Id*. Thus, the underlying factual allegations pertaining to Mr. Girty's charges are irrelevant to this Court's determination of whether Section 922(g)(1) violates the Second Amendment.

The relevant constitutional test is set out in *Bruen*: First, a court must determine whether "the Second Amendment's plain text covers an individual's conduct," and if so, the Government "must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129–30. Only if the Government carries its burden "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id*. at 2130. On its face, Section 922(g)(1) deprives individuals of their Second Amendment right to possess a handgun merely because at some point in the past they were convicted of a felony. It is Mr. Girty's position that the possession of firearms is plainly covered by the text of the Second Amendment and that the Government cannot show that Section 922(g)(1)'s limitation on the possession of handguns by felons is consistent with historical traditions of firearm regulation in the United States.

**A. Mr. Girty is among the class of persons whose rights the Second Amendment protects.**

As a threshold matter, when a defendant challenges the constitutionality of a firearm restriction under the Second Amendment, courts sometimes ask whether a criminal defendant is among "the people" to which the Second Amendment's protections apply.

And with citation to both *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), and *Bruen*, 142 S. Ct. at 2134, courts and the United States have considered whether reference to "law-abiding, responsible citizens" limits the scope of "the people" whose rights are unqualifiedly protected by the Second Amendment. See, e.g., *United States v. Rahimi*, 61 F.4th 443, 451–53 (5th Cir. 2023) (analyzing limitations concerning possession of firearms by Supreme Court references to "law-abiding" persons), Petition for Writ of Certiorari Granted, No. 22-915.

In *Heller*, the Supreme Court explicitly defined "the people" to whom the Second Amendment's protections extend. 554 U.S. at 580. First, it pointedly recognized that "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." *Id*. It followed by looking to its own prior precedent that "the people" is a term of art "refer[ring] to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id*. (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)). The *Heller* Court held that "we start therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans," *Id*. at 581, and it confirmed that presumption through further analysis, *Id*. at 595. In other words, the Supreme Court views it as inappropriate to limit the scope of the Second Amendment's reach to "subsets" of persons.

The *Rahimi* panel recognized the ongoing debate about how the term "law-abiding" citizen should impact this analysis. 61 F.4th at 451–52. It noted that two schools of thought come into play. The first "uses history and tradition to identify the scope of the right" granted by the Second Amendment,

while the second "uses that same body of evidence to identify the scope of the legislature's power to take" away that right. *Id*. (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting)). The Fifth Circuit adopted the second approach in light of *Heller's* emphasis that the Second Amendment grants its right to "all Americans," and *Bruen's* emphasis on the historical limitations set by legislatures. *Id*. at 452.

Judge Wyrick, in the Western District of Oklahoma, similarly focused on *Heller's* pronouncement in response to the United States' argument that the Second Amendment's protections did not apply to "lawbreakers" like marijuana users. *United States v. Harrison*, ___ F. Supp. 3d ___, 2023 WL 1771138, *4 (W.D. Okla. 2023). He noted that this was "precisely the sort of carving out of a subset from 'all Americans' that the *Heller* Court rejected." *Id*. Moreover, he pointed out that an approach of this nature shifts the United States' historical-tradition burden back to the defendant and requires them to first overcome it before ever reaching the *Bruen* analysis. *Id*.

There can be no meaningful dispute that Mr. Girty is an American who lives in the United States, which would plainly place him within the "national community" and "the people" whose rights are guaranteed by the Second Amendment. This Court should follow the example of *Rahimi* and *Harrison* and conclude that Mr. Girty is among "the people" who possess rights under the Second Amendment.

**B.  The Second Amendment's plain text covers the possession of firearms.**

Under *Bruen*, the first question a court must resolve is whether "the Second Amendment's plain text covers an individual's conduct." 142 S. Ct. at 2129–30. If it does, "the Constitution presumptively protects that conduct." *Id*. Since Mr. Girty brings a facial challenge to Section 922(g)(1), the question must be whether the conduct prohibited by Section 922(g)(1) is covered by the Second Amendment's plain text. *City of Albuquerque*, 667 F.3d at 1127. Section 922(g)(1) straightforwardly states: "It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to . . . possess in or affecting commerce, any firearm or ammunition." At this

4

stage of the *Bruen* analysis, Mr. Girty's status is irrelevant; it is his conduct that matters. See, e.g., *United States v. Bullock*, ___ F. Supp. 3d ___, 2023 WL 4232309, at *28 (S.D. Miss. June 28, 2023) (holding that defendant's possession of an ordinary firearm was covered by plain text of Second Amendment regardless of defendant's status as a felon). So, the question here is whether the possession of an ordinary handgun and its associated ammunition is covered by the Second Amendment's plain text. It is. In *Heller*, the Supreme Court noted that a handgun ban would "amount to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" for use in self-defense, which is central to the Second Amendment. 554 U.S. at 628. In *McDonald v. City of Chicago*, Ill., the Supreme Court held the Second Amendment applies to the States in a case concerning municipal ordinances banning the possession of handguns. 561 U.S. 742, 750 (2010). And in *Bruen*, the Supreme Court held categorically that the Second Amendment protects the carrying of handguns outside the home for self-defense. 142 S. Ct. at 2122. If the carrying of handguns outside of the home for a particular purpose is protected, then mere possession must also be protected; one cannot carry a handgun without also possessing it. And the same must be true for ammunition, for the right to possess a handgun is meaningless unless the right to possess its ammunition is also protected.

### C. The Government now bears the burden of justifying Section 922(g)(1)'s prohibition by establishing that it is consistent with this Nation's historical tradition of firearm regulation.

Because the Second Amendment's plain text covers Mr. Girty's conduct, "the Constitution presumptively protects that conduct." 142 S. Ct. at 2129–30. The burden now shifts to the Government to justify the regulation in Section 922(g)(1) "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. Put simply, the Government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127. The Supreme Court explained that the Government can meet its burden by providing "historical precedent from before, during, and even after the founding evinces a

comparable tradition of regulation." *Id*. at 2131–32 (internal quotation marks omitted). And it further noted that courts "are not obliged to sift the historical materials for evidence to sustain" the regulation because that is the Government's burden. *Id*. at 2150. While the Government need not identify "historical twin[s]," it must at least provide "well established and representative historical analogue[s]." *Id*. at 2133. *Bruen* sets forth a useful metric to understand whether an analogue adequately supports the government's contention: "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id*. at 2133 (internal quotation marks and emphasis omitted). This approach should be seen as neither a straitjacket nor a blank check; mere resemblance to a historical analogue is not sufficient, but neither is it necessary that the modern law be a dead ringer for historical analogues. *Id*. Mr. Girty does not here raise any historical arguments of his own. It is not his burden to disprove the existence of historical analogues. Should the Government attempt to carry its burden, Mr. Girty will address its arguments and purported analogues. Although, Mr. Girty does take the position that the Government will be unable to meet this burden if *Bruen* is applied strictly. As highlighted by this Court in *USA v. Steven Kenneth Reilly*, CR-23-085-RAW (Doc. 32), "Scholars have correctly foreseen that the Court's new guidance … unfortunately will be extremely difficult for lower courts to apply in a principled manner." It continued:

> In *Bruen*, the Court was responding to a very real problem in the lower courts. But *Bruen*'s new legal test is ill-suited to the task. Except for disarmament laws aimed at politically suspect minorities such as Indians, blacks, Catholics, and suspected British loyalists who refused to sign loyalty oaths, there were almost no legal restrictions during the founding era on keeping or bearing weapons, as distinct from misusing them. And such regulations were uncommon before the mid-nineteenth century. To evaluate modern gun control laws, lower court judges have now been given the unenviable task of looking for analogous regulations in a historical record hat consists largely of empty pages. *Id*. The Court went on to note that "Therefore, strictly applying Bruen would seem to pose a threat to many modern gun laws. See United States v. Rahimi, 61 F.4th 443 (5th Cir.), cert. granted, 2023 WL 4278450 (June 30, 2023)(holding §922(g)(8) unconstitutional); United States v. Daniels, 2023 WL 5091317 (5th Cir.2023)(holding §922(g)(3) unconstitutional)." *Id.*

6

## CONCLUSION

For the reasons stated above, Kelly Don Girty, Jr. respectfully requests that this Court grant his Motion to Dismiss the Indictment for failure to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(B)(v).

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 1, 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jonathan Soverly
jonathan.soverly@usdoj.gov

                                              *s/ Jarred Jennings*
                                              Jarred Jennings
                                              Assistant Federal Defender